April 27, 1977

## 78-78   MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

### The White House—The Vice President— Gifts (3 U.S.C. §§ 110, 111; 16 U.S.C. § 6a)

You have asked for our views regarding the acceptance of gifts to be used in the White House, the official residence of the Vice President, or the offices of the President and Vice President. We separately answer the questions raised by the proposed gifts.

### I.   Gifts of Art and Furnishings for the White House, the Vice President's Residence or the Offices of the President and Vice President

There is express statutory authorization for the acceptance of such gifts. Section 6 of Pub. L. No. 93-346, 88 Stat. 340 (1974), as amended, 3 U.S.C. § 111 note (1976), authorizes the acceptance of donations of art and furnishings for the official residence of the Vice President:

> The Secretary of the Navy is authorized and directed, with the approval of the Vice President, to accept donations of money or property for the furnishing of or making improvements in or about the temporary official residence of the Vice President, all such donations to become the property of the United States and to be accounted for as such.

Gifts for use in the White House are authorized by 3 U.S.C. § 110 (1976), which provides in pertinent part:

> With a view to conserving in the White House the best specimens of the early American furniture and furnishings, and for the purpose of maintaining the interior of the White House in keeping with its original design, the Director of the National Park Service is author- ized and directed, with the approval of the President, to accept donations of furniture and furnishings for use in the White House, all such articles thus donated to become the property of the United States and to be accounted for as such.

This statute authorizes gifts of "furniture and furnishings" for the official residence and the offices of the President and Vice President and other offices that are located in the East or West Wing of the White House.[1] We construe the term "furnishings" to include gifts of art and other decorations that cannot be readily characterized as "furniture." It should be noted, however, that the statute appears to contemplate the acceptance of early American items, and only where this would be consistent with maintaining the interior of the White House in keeping with its original design.

Aside from this specific provision applicable to the White House, the Secretary of the Interior is authorized to accept, in the name of the United States, "gifts or bequests of money for immediate disbursement or other property in the interest of the National Park Service, its activities, or its service, as heretofore authorized by law." 16 U.S.C. § 6a (1976). In our view, this statute constitutes authority for the acceptance of gifts in connection with the Department of the Interior's general statutory responsibility under Pub. L. No. 87-286 for maintenance of the White House and its grounds.[2] This Office advised the White House in 1974 that 16 U.S.C. § 6a authorized the Secretary of the Interior to accept the donation of a swimming pool at the White House for the President's use.

The mentioned statutes are silent on the question of the acceptance of conditional gifts. As a general rule, such gifts may not be accepted by the Government without the express approval of Congress. *Story v. Snyder*, 184 F. (2d) 454, 456 (D.C. Cir. 1950). The policy of the Curator of the White House has been to refuse gifts offered on the condition that they be displayed in a certain manner or location in the White House, on the ground that this would interfere with the continuing responsibility of the Committee for the Preservation of the White House to maintain the interior of the White House in the manner deemed suitable at a particular time. Executive Order No. 11145, 3 CFR 184 (1964-1965 compilation), reprinted in 3 U.S.C. § 110 note (1976). The type of condition that would be acceptable to the Curator would be, for example, attaching a small plaque to the gift to identify the donor. The current White House policy appears to be consistent with the general rule on conditional gifts outlined above. We recommend that a similar policy on acceptance of conditional gifts be adopted for the Vice President's residence.

It is our understanding that, by arrangement with the National Park Service, maintenance and furnishing of the East and West Wings of the White House are the responsibility of the General Services Administration (GSA). According to

---

[1]Section 1 of Pub. L. No. 87-286, 75 Stat. 586 (1961), describes the "White House" as "all of that portion of reservation numbered 1 in the city of Washington, District of Columbia, which is within the President's park enclosure, comprising eighteen and seven one-hundredths acres . . . ."

[2]The Department of the Interior's responsibility derives from the language in § 1 of Pub. L. No. 87-286 that the White House and its grounds "shall be administered pursuant to the Act of August 25, 1916, 39 Stat. 535; 16 U.S.C. 1-3, and Acts supplementary thereto and amendatory thereof." The Act of August 25, 1916, established the National Park Service in the Department of the Interior.

the Curator's Office, few of the furnishings donated to the White House are used in the East and West Wings; when they are, the items are apparently regarded as being on loan from the collection intended for the residence. We see no reason why gifts donated to the White House, especially those of an historical nature, cannot be used in the East and West Wings in this fashion.

The General Services Administration has jurisdiction over the Old Executive Office Building and would therefore be the proper recipient of any gifts for use in that building. The Administrator of GSA is authorized to accept on behalf of the United States ''unconditional gifts of real, personal, or other property in aid of any project or function'' within his jurisdiction. 40 U.S.C. § 298a (1976). Because GSA has assumed responsibility for maintenance and furnishing of the East and West Wings, we believe it may accept gifts for use there as well. It should be noted, however, that 40 U.S.C. § 298a (1976) refers only to unconditional gifts.[3]

## II. Gifts of Services Attendant to the Loan of Art or Furnishings to the Residences or Offices, such as Collection, Crating, Transportation, and Insurance

While there is no express statutory authority for the White House or the official residence of the Vice President to receive works of art or other objects on loan, we see no reason to object to this practice.[4] Nor do we see any basis for objecting to the acceptance of services related to the loan, such as collection, crating, transportation, and insurance.

In 1974 this Office advised the White House that a painting that had been given to the White House on the condition that it be exhibited to the public could be viewed as a loan and be returned to the donor if it was no longer to be displayed. That earlier advice necessarily proceeded on the assumption that such a loan could be accepted.

Moreover, the Comptroller General has ruled that agencies may accept a loan of equipment to be used in performing an agency function, although he noted that this practice should not be encouraged because of the possibility of claims against the Government or the appearance of favoritism in later agency dealings with the lender. 22 Comp. Gen. 153 (1942). In most cases there is little likelihood of an appearance of favoritism toward one who lends items to the White House or the Vice President's residence. With respect to the possibility of claims against the Government, the Committee for the Preservation of the

---

[3]This Office advised the White House in 1964 that 40 U.S.C. § 298a (1976) permitted GSA to accept a donation of television lights to be installed in one of the Wings by several networks. It was emphasized that the fixtures, once installed, were to be regarded as property of the United States for all purposes.

[4]*See* Secretary of the Navy Instruction 4001.2E (Oct. 18, 1978) governing acceptance of gifts for the Vice President's residence under Pub. L. No. 93-346, *supra.* Paragraph 3.e. defines the term ''gift'' to include loans, except loans of money. *See* ¶ 4.b. Arguably, 3 U.S.C. § 110 (1976) and 16 U.S.C. § 6a (1976) could also be construed to permit acceptance of loans, which are in a sense only temporary gifts.

White House has in the past purchased an insurance policy covering all items on loan to the White House.

If, as it appears, loans of furnishings may be accepted for use in the White House or Vice President's residence, we see no reason why the lender may not pay the costs incident to the loan. We do not mean to suggest, however, that funds appropriated for the Executive Residence or the Official Residence of the Vice President under the Executive Office Appropriations Act of 1977, Pub. L. No. 94-363, 90 Stat. 966 (1976), may not be used to pay these costs. The appropriations are available for the "refurnishing" and "furnishing" of the two residences, respectively. Presumably they may be spent for the outright acquisition of suitable art and furnishings. Obtaining such items on loan is merely another form of acquisition, albeit of a temporary nature, and we see no reason why appropriated funds cannot be expended to meet the costs of their use by the Government. *Cf.* 22 Comp. Gen. 153, 154 (1942). In this connection, the Curator's Office informed us that it has in the past spent appropriated funds to pay the costs incidental to loans of art and furnishings to the White House.

One final point with respect to loans may be of interest. The Committee for the Preservation of the White House has apparently required lenders of property to state in writing that they will not sell the property in question for a certain period of time after it has been returned by the White House and to promise that the fact that the property was once displayed in the White House will not be mentioned in advertising in connection with its later sale. This obviously is intended to prevent trading on the White House name. It may be appropriate to adopt a similar policy for the Vice President's residence.

### III.  Gifts for the Purpose of Acquiring Art, Furnishings, or Attendant Services

The special statute authorizing the acceptance of furniture and furnishings for the White House does not appear to permit acceptance of cash donations. 3 U.S.C. § 110 (1976). However, the general statutory authority of the Secretary of the Interior to accept gifts in connection with National Park Service activities specifically mentions money, 16 U.S.C. § 6a (1976), as does the special statute applicable to the Vice President's residence, Pub. L. No. 93-346, *supra*. The statute applicable to GSA does not expressly mention gifts of money, but such gifts would appear to be included in the general phrase in 40 U.S.C. § 298a (1976), "gifts of real, personal, or other property."

### IV.  The Proper Recipient of Gifts

Under paragraph 12 of Secretary of the Navy Instruction (SECNAV) 4001.2E, the Chief of Naval Operations is designated as the "cognizant official" responsible for processing gifts to the Vice President's residence; but it is the Secretary of the Navy who ultimately accepts such gifts.[5]

---

[5]If any questions arise regarding the acceptance of gifts for the Vice President's residence, the Administrative Law Section of the Navy's Office of the Judge Advocate General is familiar with

(Continued)

By tradition, the Committee for the Preservation of the White House, established by Executive Order No. 11145, has been designated as the recipient of gifts made to the White House, although it, of course, accepts such gifts on behalf of the United States. As we understand it, donations of funds to be used for furnishing the White House are accepted by the Committee and deposited in a special account maintained by the National Park Service for use by the Committee. All gifts are acknowledged by a certificate issued by the Committee.[6] The Curator's Office assists the Committee in these matters.

Finally, the regional office of the General Services Administration should be consulted regarding donations of art or furnishings to be used in the Old Executive Office Building or gifts of furniture of no particular historical significance to be used in the East or West Wings of the White House.

### V. Solicitation of Gifts

We are not aware of any statute that either authorizes or prohibits members of the President's or Vice President's staff from soliciting gifts of art, furnishings, and attendant services.[7] To the degree that the President and Vice President become involved in the gift process, we see no reason why their staffs may not assist them. However, the applicable statutes appear to assign primary responsibility for the White House and Vice President's residence to other entities, subject to the general supervision of the President and Vice President. As mentioned above, the Committee for the Preservation of the White House has traditionally assumed responsibility for acceptance of gifts to the White House.

In addition, the restrictions contained in Executive Order No. 11222, 3 CFR 306 (1964-1965 compilation), reprinted in 18 U.S.C. § 201, note (1976), and the implementing regulations for the Executive Office of the President should be considered.[8] Section 201(a) of the Executive order prohibits any employee covered by the order from soliciting any gift, loan, or other thing of monetary value from any person, organization, or group that:

> (1) has, or is seeking to obtain, contractual or other business or financial relationships with his agency;

---

(Continued)
internal procedures for gifts to the Navy in general, including those to the Vice President's residence.

[6]We are not aware that a comparable committee has been established for the Vice President's residence, but one could presumably be created by the Secretary of the Navy, with the Vice President's approval. Such a committee could relieve the Vice President's staff and family of any administrative burden in accepting gifts and dispel any potential awkwardness in having them directly involved in the process.

[7]40 U.S.C. § 193p. (1976) makes it unlawful for "anyone *other than an authorized employee or concessionaire* . . . to solicit alms, subscriptions, or contributions" (emphasis added) within the buildings or grounds of the Institution. Although this statute is obviously inapplicable to the present situation, it is the only statute pertaining to solicitation of gifts by Federal employees.

[8]The Office of the Vice President is not included among the agencies to which the Executive Office's Standards of Conduct apply. *See* 3 CFR 100.735-2(a) (1977). However, we understand that Vice President Rockefeller issued Standards of Conduct regulations for the Vice President's staff which are still in effect and are similar in most respects to those of the Executive Office.

> (2) conducts operations or activities which are regulated by his agency; or
>
> (3) has interests which may be substantially affected by the performance or nonperformance of his official duty.

*See also* 3 CFR 100.735-14(a) (1977). This section was directed primarily at the solicitation of gifts for the employee's personal benefits. Nevertheless, as a matter of policy, solicitations should be avoided where the persons or organizations involved have a significant interest in matters that are likely to be reviewed in the White House or the Vice President's Office. *See also* Executive Order No. 11222, §§ 201(c)(2), (4), and (6); 3 CFR 100.735-4(c)(2), (4) and (6) (1977).

Even where the potential donor has no particular interest in matters pending before the President or Vice President, we believe it would be advisable for members of the President's and Vice President's regular staffs to avoid extensive involvement in the solicitation of gifts or loans. Time spent by these individuals on solicitation of gifts would of necessity be diverted from their ordinary governmental duties, thereby, perhaps, giving the appearance of "[i]mpeding Government efficiency and economy." Executive Order No. 11222, § 201(c)(3); 3 CFR 100.735-4(c)(3) (1977).

Finally, although loans of art and furnishings to the White House and the Vice President's residence are official in nature, they result in at least some personal benefit in terms of use and enjoyment by the President and Vice President, their families, and staff members. To this extent, excessive involvement of staff members in solicitation might create an appearance of "[u]sing public office for private gain," which is prohibited by section 201(c)(1) of Executive Order No. 11222 and 3 CFR 100.735-4(c)(1) (1977).

## VI. Forms of Agreement

The Office of the Curator has stated that most donors do not use any particular form or deed for gifts to the White House. The usual procedure is for the donor to address a letter to the Committee for the Preservation of the White House stating that an unconditional gift is being made to the Committee on behalf of the United States.[9] The Curator's Office also informed us that this arrangement has proved to be satisfactory in the past and that no problems have arisen. We see no reason why the same procedure cannot be used for gifts to the Vice President's residence, especially if a policy is adopted of not accepting conditional gifts.

Vice President Rockefeller executed a deed of gift for certain property he donated to the Vice President's residence, but a copy of this deed was not

---

[9]The Curator's Office also stated that it makes clear that it is the donor's responsibility to have the property assessed for tax purposes.

retained in the files of the Office of the Navy's Judge Advocate General because it was an unrestricted gift. Generally, deeds should be filed with the Secretary of the Navy through the Chief of Naval Operations, the cognizant official for gifts to the Vice President's residence, as a permanent record of the gift. A letter of acknowledgement from the Secretary of the Navy to the donor would be adequate evidence of acceptance.

JOHN M. HARMON
*Acting Assistant Attorney General*
*Office of Legal Counsel*
